SOLEY t/a Cardiff Hall East Apartments et al. *v.*
STATE OF MARYLAND COMMISSION
ON HUMAN RELATIONS

[No. 134, September Term, 1975.]

*Decided April 14, 1976.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and ▌O'DONNELL, JJ.

*Jeffrey Rockman* and *Leonard E. Cohen*, with whom were *Frank, Bernstein, Conaway & Goldman* and *Alan I. Baron* on the brief, for appellants.

*Philip J. Tierney, General Counsel*, with whom were *Jacob J. Edelman* and *Edelman, Levy & Rubenstein* on the brief, for appellee.

LEVINE, J., delivered the opinion of the Court.

This case is a companion to *Banach v. St. Comm'n on Human Rel.*, 277 Md. 502, 356 A. 2d 242 (1976), also decided today. The appeal here arises from an order of the Circuit Court for Baltimore County (Land, J.) sustaining, without leave to amend, a demurrer to bills of complaint for declaratory relief filed by appellants, Joseph L. Soley and Howard M. Berman, and enforcing a subpoena duces tecum served on each of them by the State of Maryland Commission on Human Relations (the commission) in connection with an investigation which it was then conducting. The subpoenas followed issuance by the commission of an amended complaint which charged appellants with engaging in discriminatory housing practices. We granted certiorari prior to consideration of this appeal by the Court of Special Appeals, and since we think Judge Land ruled correctly in both respects, we shall affirm.

The commission issued the amended complaints in its own name pursuant to Maryland Code (1957, 1972 Repl. Vol.) Art.

49B, § 12 (b), charging appellants, each of whom is the owner of an apartment house development in Baltimore County, with unlawful discrimination in regard to "tenant recruitment policies, advertising and rental practices" resulting "in the virtual exclusion of Black persons from tenancies in the aforesaid apartments because of their race in violation of [Art. 49B, § 22]." At the same time, the commission ordered that "an investigation of said practices" be undertaken to inquire into "the facts and circumstances concerning the . . . housing practices of the respondent[s]." An effort to conduct the investigation by interrogatories proved unsuccessful. The commission then issued subpoenas over the signature of its chairman requesting the production of various documents and records pertaining to appellants' rental procedures. The subpoenas bore no more fruit than did the interrogatories which had preceded them, since appellants maintained that the commission lacked the power to issue subpoenas except in connection with the hearing contemplated by § 14 of Art. 49B.

To resolve the impasse, each appellant then filed his bill of complaint reciting the chronology of events leading from the issuance of the initial complaints by the commission to the subpoenas. Appellants prayed that the amended complaints of discriminatory housing practices be declared "illegal and invalid" for failure to comply with § 12 (b) of Art. 49B, that the subpoenas be declared invalid, and that the commission be enjoined from enforcing them. The commission responded with a demurrer and an affirmative claim of its own asking that the court enforce the subpoenas pursuant to § 14 (d) of Art. 49B. The two cases were then consolidated. The chancellor, in sustaining the demurrers, held with regard to the relief sought by appellants that the cases were not ripe for declaratory relief, since applicable statutes afforded them "a special form of remedy." Further, he rejected appellants' contention that § 14 (d) of Art. 49B limited the subpoena power to the hearing stage of commission proceedings.

In this Court, appellants reiterate the arguments advanced below, that the complaints issued by the

commission, being couched in conclusory language, did not comply with the requisites of Art. 49B, § 12 (b) in regard to particularity, and that the complaints failed to allege the "reliable information" which the commission must receive before it can issue a complaint in its own name. As we have intimated, however, we agree with the circuit court ruling that these questions need not be reached due to appellants' failure to avail themselves of the special form of remedy provided by statute. Additionally, of course, appellants renew their argument that the subpoenas were beyond the scope of the statutory authority granted to the commission, since they may be issued only in connection with hearings under § 14. Since our holding in *Banach* is fully dispositive of this last contention, we shall only consider it briefly.

### (1)

In *Banach*, we held that the commission possesses statutory authority to issue a subpoena duces tecum while conducting a preliminary investigation under Art. 49B, § 12 (b). There, the commission was engaged in conducting an investigation following receipt of four individual complaints of discriminatory practices, but prior to issuance of a complaint in its own name. Although superficially the cases have reached us in different postures, for purposes of the question we now consider, they are not dissimilar. The argument being made here is that the subpoena power granted by § 14 (d) does not extend to any investigatory stage, not even to that being conducted here under § 13 (a) following issuance of a complaint by the commission itself.[1]

If, as we held in *Banach*, the subpoena power delegated to the commission by § 14 (d) extends to the preliminary investigation preceding the issuance of a commission complaint, it is clearly available following the issuance of such a complaint. At that point the staff becomes engaged in

---

1. In *Banach*, the respondent maintained that the subpoena power did not extend to the preliminary investigation stage preceding the issuance of a commission complaint, while conceding that it was available for an investigation under § 13 (a) subsequent to the issuance of a commission complaint.

an investigation pursuant to the command of § 13 (a) that may lead directly to a finding of probable cause to believe that a discriminatory act has been committed, and may conceivably eventuate in the quasi-judicial hearing contemplated by § 14.

In *Banach,* we underscored the legislative intent, immediately apparent in the language of § 14 (d) itself, that the subpoena power was granted for the "administration and enforcement" of the several subtitles in Art. 49B, and for "proceedings," not merely "hearings." The word "proceedings," we said, imports a broader scope than "hearings," encompassing both the investigative and adjudicative functions of an administrative agency. We concluded in *Banach,* as, of course, we do here, that the General Assembly used the word "proceedings" in its broad sense in § 14 (d). Manifestly, just as the Legislature insured that no one would be subjected to a commission complaint prior to a meaningful preliminary investigation, it was careful to provide for an effective investigation prior to the quasi-judicial stage.

We hold, therefore, that the Human Relations Commission possesses statutory authority to issue a subpoena duces tecum during an investigation being conducted in accordance with § 13 (a) of Art. 49B.

### (2)

The chancellor declined to entertain appellants' prayers for ᵈeclaratory relief on the authority of Code (1974) § 3-409 (b), Courts & Judicial Proceedings Article, which requires that a statutory remedy, where provided for a specific type of case, be followed in lieu of a proceeding for declaratory relief. Notwithstanding appellants' claim to the contrary, we think it clear that § 15 of Art. 49B and § 255 (a) of Art. 41, part of the Administrative Procedure Act, combine to provide the "special form of remedy" contemplated by § 3-409 (b) of the Courts & Judicial Proceedings Article.[2]

---

2. Maryland Code (1957, 1971 Repl. Vol.) Art. 41, § 255 (a) provides: "Any party aggrieved by a final decision in a contested case, whether such decision is affirmative or negative in form, is entitled to judicial review thereof under this subtitle."

Section 15 of Art. 49B deals with enforcement of commission orders and is couched in such language as to persuade us that judicial review may be sought by either the commission or the respondent in accordance with §§ 255 and 256 of Art. 41.

The general rule, as appellants recognize, is that where a statute provides a special form of remedy, the plaintiff must use that form rather than any other, *Hartman v. Prince George's Co.*, 264 Md. 320, 323, 286 A. 2d 88 (1972); *Pressman v. State Tax Commission*, 204 Md. 78, 84, 102 A. 2d 821 (1954); *Tanner v. McKeldin*, 202 Md. 569, 577, 97 A. 2d 449 (1953); and if he is unsuccessful, he must seek the judicial review provided by the Legislature rather than invoke the ordinary jurisdiction of the courts, *Lee v. Sec. of State & Mahoney*, 251 Md. 134, 139, 246 A. 2d 562 (1968). The rule requiring exhaustion of administrative or statutory remedies is supported by sound reasoning. The decisions of an administrative agency are often of a discretionary nature, and frequently require an expertise which the agency can bring to bear in sifting the information presented to it. The agency should be afforded the initial opportunity to exercise that discretion and to apply that expertise. Furthermore, to permit interruption for purposes of judicial intervention at various stages of the administrative process might well undermine the very efficiency which the Legislature intended to achieve in the first instance. Lastly, the courts might be called upon to decide issues which perhaps would never arise if the prescribed administrative remedies were followed.

Here, the investigation being conducted by the commission staff may fail to produce any support for the allegations contained in the commission complaint, and therefore warrant a dismissal without resort to further proceedings. Or, should probable cause be found, a disposition may be reached by conciliation. But if the quasi-judicial hearing stage is reached, appellants will receive the protection of the various rights granted them by § 14 as well as those guaranteed by the Federal and State Constitutions. This case, therefore, amply demonstrates the

soundness of the rule requiring exhaustion of administrative and statutory remedies by one seeking declaratory relief.

The general rule requiring exhaustion of statutory remedies is not, however, without its exceptions. One which we have already held inapplicable here, of course, is where there is no adequate administrative remedy or provision for review of the agency decision. *Poe v. Baltimore City,* 241 Md. 303, 308-309, 216 A. 2d 707 (1966). Another prominent exception to the general rule, equally inapplicable here, concerns the presentation of certain constitutional issues, although this exception is not favored where there are statutory remedies permitting such issues to be raised. *Poe v. Baltimore City, supra,* 241 Md. at 308; *see Pressman v. State Tax Commission, supra,* 204 Md. at 84; *Tanner v. McKeldin, supra,* 202 Md. at 577.

The remaining ground on which appellants rely for their contention that the general rule should not be applied here is that there need be no exhaustion of administrative remedies where the act of the administrative agency is alleged to be ultra vires or illegal. They rest this contention on two cases, *Shpak v. Mytych,* 231 Md. 414, 418, 190 A. 2d 777 (1963), and *Stark v. Board of Registration,* 179 Md. 276, 284, 19 A. 2d 716 (1941). This reliance is misplaced. In neither *Shpak* nor *Pressman v. Barnes,* 209 Md. 544, 549-50, 121 A. 2d 816 (1956), the principal authority which it cites, did this Court hold that declaratory relief may be granted where a law is alleged to be ultra vires or illegal, despite the existence of a statutory remedy. *Pressman v. Barnes, supra,* merely recites the general rule that a taxpayer may invoke equitable relief to restrain a public official or an agency whose action is ultra vires or illegal. This proposition in no way collides with the "exhaustion of administrative remedy rule," nor is it an exception to it.

Nor does *Stark v. Board of Registration, supra,* support the theory advanced by appellants, who rely on the statement there that mandamus will lie to compel the observance of a statute according to its language, meaning and intent if an administrative agency has pursued a method "contrary to a statute, or standards of qualification

[have been] set up [that are] not authorized or prescribed by [the statute]." 179 Md. at 284. That dicta has been deprived of any vitality it may have possessed by the subsequent adoption of the Administrative Procedure Act, which encompasses such complaints within the scope of judicial review.[3]

We find no authority, therefore, for the proposition that there need be no exhaustion of a statutory or administrative remedy where the act of an administrative agency is alleged to be ultra vires or illegal. Accordingly, we hold that the chancellor was correct in his conclusion that where a statute provides a special form of remedy for a specific type of case, that statutory remedy shall be followed in lieu of a proceeding under the declaratory judgment act.

*Judgment affirmed; appellants to pay costs.*

---

**3.** Among the grounds on which the decision of an administrative agency may be attacked on judicial review are "excess of . . . statutory authority or jurisdiction of the agancy; . . . unlawful procedure; [or] other error of law . . . ." Code (1957, 1971 Repl. Vol.) Art. 41, § 255 (g).