*Chesapeake Bay Foundation, Inc., et al. v. CREG Westport, LLC, et al.*
No. 1063, September Term 2020.  Opinion by Wells, J.


**ADMINISTRATIVE LAW – EXHAUSTION OF REMEDIES**

When a legislature provides an administrative remedy as the exclusive or primary means by which an aggrieved party may challenge a government action, the doctrine of administrative exhaustion requires the aggrieved party exhaust the prescribed process of administrative remedies before invoking the jurisdiction of the courts.


**ADMINISTRATIVE LAW– FINALITY OF ADMINISTRATIVE REVIEW**

An agency order is not final when it is contemplated that there is more for the agency to do.  Therefore, to be "final," the order or decision must dispose of the case by deciding all questions of law and fact and leave nothing further for the administrative body to decide.


**ADMINISTRATIVE LAW – FOREST CONSERVATION PLANS**

Forest Conservation Plans are but one component of the administrative approval process, the approval of which does not allow for a separate, statutorily authorized mechanism of review subject to exhaustion.


**ADMINISTRATIVE LAW – FOREST CONSERVATION PLANS**

Harford County's approval of a Forest Conservation Plan leaves "more for the agency to do."  The administrative process is not final until the county approves either a preliminary site plan or a final plan so that construction of the designated site may begin.

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1063

September Term, 2020

_____

CHESAPEAKE BAY FOUNDATION, INC.,

ET AL.

v.

CREG WESTPORT I, LLC, ET AL.

_____

Shaw Geter,
Wells,
Ripken,

JJ.

_____

Opinion by Wells, J.

_____

Filed: September 8, 2021

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

Appellees, CREG Westport I, LLC, et al., sought to develop several parcels of land located in Harford County into a multi-use business park. As mandated by the county's development process, appellees submitted a Forest Conservation Plan ("FCP"), which the county approved. Appellants, Chesapeake Bay Foundation and several local residents, sought judicial review of the FCP in the Circuit Court for Harford County. Appellees moved to dismiss, arguing that approval of an FCP is not a final decision of the county's zoning department. The circuit court agreed and dismissed the complaint. Appellants filed a timely appeal. Satisfied that the circuit court did not commit error, we affirm.

## BACKGROUND

CREG Westport I and Harford Investors, LLP (hereafter "the developers") sought Harford County's approval of their plan to develop a mixed-use business park bordered by Interstate 95 and Edgewood and Abingdon Roads in Harford County. The completed project, to be called the Abingdon Business Park, would have retail venues, restaurants, a hotel, and warehouses.

The site, also known as Abingdon Woods, is zoned Commercial-Industrial. It is composed of multiple parcels and covers over 300 acres of forested land, including non-tidal wetlands. Because the land is mostly forested, it is subject to the Harford County Forest and Tree Conservation Plan Regulations and to a Forest Stand Delineation as found in the Maryland Code (2012 Repl. Vol., 2016 Supp.), Natural Resources Article ("NR") § 5-1605 and the Harford County Code (hereafter, "County Code") § 267-37. As they were required to do, the developers submitted an FCP, outlining the specific strategies the developers would take to retain, protect, and reforest the site, consistent with the provisions

of the 1991 Maryland Forest Conservation Act. *See* NR §§ 5–1603(a), 5–1604, and 5–1605.

The Director of the Harford County Department of Planning and Zoning (hereafter, "the Department") approved the FCP on December 9, 2019. A month later, January 8, 2020, the Chesapeake Bay Foundation and several local homeowners (hereafter, collectively referred to as "the Foundation") petitioned for judicial review of the FCP. The developers moved to dismiss, arguing that the FCP was not a final decision of the Department. The Circuit Court for Harford County set the matter for a hearing on August 19, 2020.

In the meantime, and prior to the August 19 hearing, the developers submitted a preliminary plan application to the Department, which, among other things, sought to consolidate several of the parcels and create a public road. The Department approved the preliminary plan on January 17, 2020. And, the developers submitted a site plan for three lots, specifying what buildings were to be constructed and the specific uses for each lot. The Department approved Lot 1 on February 19, 2020 and subsequently approved Lots 2 and 3 five days later, February 24, 2020. These approvals allowed the developers to begin construction of the business park.

The hearing on the motion to dismiss was held as scheduled on August 19, 2020, after which the court took the case under advisement. On November 22, 2020, the court issued a memorandum opinion and order that sided with the developers, concluding that the FCP was "not a final decision of the Department [of Planning and Zoning] . . . . ." Further, the court found that,

2

many plans, in addition to the Forest Conservation Plan, make up the components of the Preliminary and Site Plans. To permit judicial review of the Forest Conservation Plan would permit piecemeal review of each decision reached by each agency involved in the application process, and would be contrary to the intent of Maryland Rule 7-201 and section 709 of the Harford County Charter.

Finally, the court noted that the Foundation could appeal the "overall development plan."

Significantly, the Foundation chose not to challenge either the Department's approval of the preliminary plan or the approval of the site development plan. Instead, the Foundation appealed from the circuit court's dismissal of the petition for judicial review.

Now, before this Court, the Foundation poses two questions which we have distilled into one: Did the circuit court properly dismiss the Foundation's petition for judicial review of the FCP because it was not a final action of the Department?[1] Additional facts will be discussed later in the opinion.

## STANDARD OF REVIEW

Whether the circuit court erred when it granted the developers' motion to dismiss is a question of law, which we review de novo. *Greater Towson Council of Cmty. Ass'ns v. DMS Dev., LLC*, 234 Md. App. 388, 408 (2017). In reviewing the complaint, we must "presume the truth of all well-pleaded facts in the complaint, along with any reasonable inferences derived therefrom." "Dismissal is proper only if the facts and allegations, so

---

[1] The Foundation's verbatim questions are:
1. Whether the approval of a Forest Conservation plan is a final agency action subject to review by the Circuit Court?

2. Whether the Circuit Court erred in dismissing the petition for judicial review of the Forest Conservation Plan?

viewed, would nevertheless fail to afford plaintiff relief if proven." *Higgginbotham v. Public Service Com'n of Maryland*, 171 Md. App. 254, 264 (2006). Additionally, "[t]his Court will affirm the circuit court's judgment 'on any ground adequately shown by the record, even one upon which the circuit court has not relied or one that the parties have not raised.'" *D.L. v. Sheppard Pratt Health System, Inc*., 465 Md. 339, 350 (2019) (quoting *Sutton v. FedFirst Fin. Corp*., 226 Md. App. 46, 74 (2015) (citations omitted), *cert. denied*, *Sutton v. FedFirst Fin*., 446 Md. 293 (2016)).

## ANALYSIS

Both parties agree that the so-called rules of "exhaustion" and "finality" apply in this case. In other words, before a party seeks judicial review of an administrative agency's actions, they must first exhaust all statutorily prescribed administrative remedies and the agency's action must be its final one. *See Renaissance Centro Columbia, LLC v. Broida*, 421 Md. 474, 487 (2011). They disagree about whether an FCP is a final administrative decision of the Department.

### A. Parties' Contentions

The Foundation contends that the Department's approval of an FCP is a "final agency action." Their argument rests on the theory that because the Forest Conservation Act and the Harford County Code "prioritizes retention of '[c]contiguous forest that connect the largest undeveloped or most vegetated tracts of land within and adjacent to the site,'" the Director's decision on whether an applicant's FCP "application is 'complete and approved,'" ends the administrative process, at least as far as forest retention is concerned. *See* NR § 5-1607(c)(ii); County Code § 267-39(C)(2).

4

In the Foundation's opinion, the Department's approval of an FCP is immediately appealable under County Code § 268-28, because it is a stand-alone administrative "action, ripe for judicial review, and not simply an interlocutory order." Specifically, County Code § 268-28(A) permits a "[a]ny interested person whose property is affected by any decision of the Director of Planning and Zoning, …within 30 calendar days after the filing of such decision, appeal to the Circuit Court for Harford County." Further, the Foundation argues, that if the Forest Conservation Act mandates state-wide compliance, then there must be some means of appealing a county's decision to approve an FCP, even if an FCP is part of an overall development plan.

In setting out their argument, the developers focus on that last point. They insist than an FCP is but one

> component of the final development approval process. The FCP is a condition precedent to the issuance of a site plan approval and preliminary plan approval, similar to a storm water management concept plan, a traffic impact analysis, a landscaping/light/buffer plan, and everything else that is listed on the site plan application and checklist and preliminary plan application and checklist.

The developers assert that the administrative development process is neither exhausted nor final until the Department issues "a preliminary plan approval letter and/or site plan approval letter." In fact, the developers point out that simply because the Department approved the FCP in December 2019, that did not mean that the developers could immediately begin construction. They had to wait until the Department approved the preliminary plan, which was done on January 17, 2020 and the site plans submitted for

5

three separate lots were approved in February 2020.[2] The developers insist that to allow judicial review of an FCP separately from the preliminary or site plans would have required the circuit court to insert itself in the middle of the administrative process, violating the rules of exhaustion and finality. Therefore, according to the developers, the circuit court correctly dismissed the Foundation's petition for judicial review.

## B. Exhaustion of Administrative Remedies

"When a legislature provides an administrative remedy as the exclusive or primary means by which an aggrieved party may challenge a government action, the doctrine of administrative exhaustion requires the aggrieved party to exhaust the prescribed process of administrative remedies before seeking 'any other remedy or invok[ing] the ordinary jurisdiction of the courts.'" *Priester v. Baltimore County, Maryland*, 232 Md. App. 178, 193 (2017) (quoting *Soley v. State Comm'n on Human Relations*, 277 Md. 521, 526 (1976)). *Soley* explained that the exhaustion rule is based, in part, on the "discretionary nature" of agency decisions and the "expertise" that "the agency can bring to bear in sifting the information presented." *Id*.

---

[2] At the hearing on the motions, without objection, counsel for the developers explained:

> [COUNSEL FOR DEVELOPERS]: The Preliminary Plan approval allows the Owner Developer to subdivide the property. The Site Plan approval allows the Developer to build what it is going to build; in this case it is warehouses. In the case here, the Preliminary Plan approval approved nine lots and the Site Plan approval, there were three of them that were approved by the Department of Planning and Zoning allowing the warehouses to be built. One cannot develop property in Harford County without a Site Plan approval or a Preliminary Plan approval or in our case both. It simply cannot be done.

Indeed, the United States Supreme Court has emphasized that administrative exhaustion acts as a brake on judicial interference in the administrative process. "[T]he rule requiring exhaustion of administrative remedies, is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties." *United States v. Western Pac. R.R. Co.*, 352 U.S. 59, 63–64 (1956). "'Exhaustion' applies where a claim is cognizable in the first instance by an administrative agency alone; judicial interference is withheld until the administrative process has run its course." *Long Green Valley Ass'n v. Bellevale Farms, Inc.*, 205 Md. App. 636, 690 (2012) (quoting *Western Pac. R.R.*, 352 U.S. at 64).

## C. "Finality" in the Administrative Process

The Court of Appeals has explained that "an agency order is not final when it is contemplated that there is more for the agency to do." *Kim v. Comptroller*, 350 Md. 527, 533–34 (1998) (citations omitted). So, "[t]o be 'final,' the order or decision must dispose of the case by deciding all questions of law and fact and leave nothing further for the administrative body to decide." *Willis v. Montgomery Cnty.*, 415 Md. 523, 534 (2010) (citations omitted); *see also Arnold Rochvarg, Principles and Practice of Maryland Administrative Law* 190 (2011) ("The action of an administrative agency is final if it determines or concludes the rights of the parties, or if it denies the parties means of further prosecuting or defining their rights and interests in the subject matter in proceedings before the agency, thus leaving nothing further for the agency to do.").

It has been said that exhaustion and finality "overlap" to the extent that "a party must exhaust the administrative remedy and obtain a final administrative decision …

7

before resorting to the courts." *Laurel Racing Ass'n, Inc. v. Video Lottery Facility Location Comm'n*, 409 Md. 445, 460 (2009).

The Court of Appeals explained that the purpose of the finality rule is

> to avoid piecemeal actions in the circuit court seeking fragmented advisory opinions with respect to partial or intermediate agency decisions. Not only would a contrary rule create the real prospect of unnecessary litigation, as a party choosing to seek review of an unfavorable interlocutory order might well, if the party waited to the end, be satisfied with the final administrative decision, but the wholesale exercise of judicial authority over intermediate and partial decisions could raise serious separation of powers concerns.

*Driggs Corp. v. Maryland Aviation Admin.*, 348 Md. 389, 407–08 (1998); *see also Priester*, 232 Md. App. at 194 ("The rule of finality limits judicial intervention during the administrative process to promote the efficiency that the legislature attempted to achieve through the administrative process, and relieves courts of the need "to decide issues which perhaps would never arise if the prescribed administrative remedies were followed.") (quoting *Soley*, 277 Md. at 526).

### D. The Harford County Zoning Approval Process

With these principles in mind, we look to the county's zoning process to determine when exhaustion and finality arise regarding an FCP. We first determine whether there is a prescribed method of challenging the Department's approval of an FCP. To do this, we look at Harford County's site plan approval process.

From our review of the record, Harford County has a comprehensive process for regulating development. The process for approval of a preliminary or a site plan, (either of which allows the owner-developer to start construction), begins with the owner-

8

developer filling out a "site plan application." The plan must be submitted to the Department for review by all necessary county agencies. County Code § 267-3. Subdivision of more than five residential lots and development of institutional and commercial sites must be reviewed by the Development Advisory Committee (DAC). County Code § 268-19. The DAC advises the director of planning about major subdivisions and large-scale developments. *Id*. The DAC is composed of representatives of county, state, federal, and utility agencies. Each county agency represented on the DAC provides oral or written comment expressing that agency's recommendation or opinion regarding each development plan under review by the committee. *Id*.[3] The DAC meeting is also a forum for the public to address issues and comment, with adequate notice being given to the public by conspicuously posting a sign near the property as well placing a

---

[3] The DAC includes, but is not limited to, the following:

Board of Education
Army Corps of Engineers/Maryland Department of the Environment
Department of Parks and Recreation
Department of Planning and Zoning
Department of Public Works
Fire and Ambulance Chiefs Association
Health Department
Maryland Forest, Park, and Wildlife Service
Public Utility Companies
Soil Conservation District
State Highway Administration.

*See* www.harfordcountymd.gov/959/Development-AdvisoryCommittee.
https://bit.ly/33xA1XS. (Last visited 5/20/21.)

notice in two newspapers of general circulation in the county. County Code § 268-19(4) and (5).

As part of the site plan application, a developer must submit an FCP, among several other requirements, such as, site plans, a landscaping/lighting/buffer plan, a storm water management concept, and a traffic impact analysis "to ensure acceptance of the plan for processing." As previously discussed, an FCP is required by County Code § 267-37 and NR § 5-1605.

After reviewing the County Code and the relevant statutory authorities we have not discovered a means by which an FCP may be administratively reviewed, except in the context of the approval of an overall development plan. For example, County Code § 267-37(D) indicates that the FCP should be viewed as part of the Department's approval of a preliminary plan or a site plan.

> **The Department's review of a forest conservation plan shall be concurrent with the review of the subdivision plan**, grading permit application or building permit application associated with the project.

(Emphasis supplied). Additionally, we note that NR § 5-1608(a) has an almost identical provision:

> **Concurrent review. The review of the forest conservation plan shall be concurrent with the review process of the State or local authority for the subdivision plan**, or the grading or sediment control permit, whichever may be submitted first.

(Emphasis supplied). From our review of the relevant statutory authority, there does not appear to be a statutorily derived means of obtaining judicial review of an FCP as an "independent" or "stand alone" agency decision as the Foundation insists. Instead, what

10

we take from County Code § 267-37(D) and NR § 5-1608(a) that the Department's approval of an FCP is but one component of the entire zoning process and is subject to the county's review of the entire subdivision plan.

But the Foundation insists that the authority to request judicial review of the approved FCP lies under County Code Article IV, "Concept Plans, Preliminary Subdivision Plans and/or Site Plans," section 268-28A, which, in pertinent part, states that,

> [a]ny interested person whose property is [a]ffected by any decision of the Director of Planning, may within 30 calendar days after the filing of such decision, appeal to the Circuit Court for Harford County.

We note, however, that the Harford County Charter, Article VII, Planning and Zoning, section 709 clarifies the County Code:

> **Any person aggrieved by any final decision in a zoning case shall have the right to appeal that decision to the Circuit Court for Harford County** and shall have the further right of appeal to the Court of Appeals of Maryland. The words "person aggrieved" shall be liberally construed to substantially broaden that class of persons and shall be interpreted to effectuate the general purposes of this Article.

(Emphasis supplied.) The County's charter specifies that only a final decision, not simply "any decision" made in a zoning case, is appealable to the circuit court. We read these county provisions much like statutes, so that they make sense within the county's overall development scheme. "We do not read a statutory provision in isolation. Instead, we consider its purpose, goal, and context as a whole." *Bartenfelder v. Bartenfelder*, 248 Md. App. 213, 235 (2020), *cert denied*, 472 Md. 5 (2021) (citing *Papillo v. Pockets, Inc.*, 119 Md. App. 78, 83-84 (1997). Examining the context of the statute includes construing

11

provisions within the same section harmoniously, if possible. *George Wasserman & Janice Wasserman Goldsten Family LLC v. Kay*, 197 Md. App. 586, 628 (2011).

The Court of Appeals has said that a county's charter is its "constitution." In this sense, to rephrase the popular saying, the charter is the "supreme law of the county." *Bd. of Sup'rs. of Elections of Anne Arundel County v. Smallwood*, 327 Md. 220, 237 (1992) ("This Court has 'repeatedly explained that a county charter is equivalent to a constitution.'"); *Save Our Streets v. Mitchell*, 357 Md. 237, 248-49 (2000). "A charter is thus a permanent document intended to provide a broad organizational framework establishing the form and structure of government in pursuance of which the political subdivision is to be governed and local laws enacted. It is the organic, the fundamental law...." *Cheeks v. Cedlair Corp.*, 287 Md. 595, 607 (1980).

Consistent with our obligation to make sense of seemingly conflicting county zoning provisions, we read the county charter and the County Code together to effectuate the overall regulatory scheme, which in this case involves county approval of commercial construction. We give greater weight to the county's charter as the authorizing authority for when appeals may be filed in zoning cases. *See Smallwood*, 327 Md. at 237; *Mitchell*, 357 Md. at 248-49. The charter makes clear that only "final" decisions of the Department may be the subject of judicial review in the circuit court.

We conclude that there is not a separate right to seek judicial review of an approved FCP any more than there is a seperate right to seek a separate review of any other component of a zoning site plan. Indeed, from our review of the Harford County zoning approval process we think that the developers were accurate when, at oral argument, they

12

referred to the FCP as part of a negotiation between the relevant agencies and the Department. Once the FCP, like other "negotiations" the DAC (and ultimately the Department) considers, is approved it then becomes an essential term of the contract between the developers and the county. That contract is a preliminary plan or a site plan. In this case, the developer had to obtain both. And only with a preliminary plan or a site plan may the developer begin construction.

So while the Foundation argues that the county's approval of an FCP "marks the end of the [c]ounty's decision-making process with regard to the removal, retention, and replacing of forested area associated with the development," we agree that approval of an FCP indeed ends that part of the approval process. But we disagree that simply because that part of the process ends, a party then has a right to seek judicial review, particularly where none is statutorily permitted.

The Court of Appeals has explained that "in order for an administrative agency's action properly to be before this Court (or any court) for judicial review, there generally must be a legislative grant of the right to seek judicial review." *Appleton v. Cecil County*, 404 Md. 92, 98–99 (2008) (quoting *Harvey v. Marshall*, 389 Md. 243, 273 (2005)). Maryland Rule 7–201(a) regulates an action to review an order or action of an administrative agency "where judicial review is authorized by statute ...." *See Bucktail, LLC v. County Council of Talbot County*, 352 Md. 530, 541 (1999) (noting that Maryland Rules 7–201 and 7–202 do "not grant a right of judicial review, and ... [are] inapplicable where judicial review is not authorized by statute"). We conclude that the Department's

13

approval of an FCP is but one stage of the development process for which there is no separate mechanism of administrative review subject to exhaustion.

Turning specifically to the issue of finality, we conclude that the Department's approval of an FCP does not end the administrative process. *Kim*, 350 Md. at 533–34. After reviewing Harford County's zoning policies and the comprehensive process that the county has established to approve large-scale commercial development such as the Abingdon Business Park, we determine that preliminary plan approval, or site plan approval, are "final" actions of the Department which only then trigger judicial review of any of the components of the approved plans under County Charter § 709 and County Code § 268-28.[4] The mere approval of the FCP during the process leaves "more for the agency to do," such as assessing the impact that the development will have on local traffic, storm water management, surveys and the creation of plats, public hearings, etc. The goal, and therefore the final stage in the process, is for the developer to commence construction. That may only occur after the site plan is ultimately approved.[5] Consequently, to allow judicial review of an FCP in the middle of the zoning approval process would amount to the type of "piecemeal" consideration of administrative decisions which the Court of Appeals has strongly disfavored. *Driggs Corp.*, 348 Md. at 407–08.

---

[4] Additionally, we note that the record shows that the Abingdon Business Park is in the center of the county's "development envelope." In other words, the site is within the area that the county has specifically designated for commercial development.

[5] *See* https://www.harfordcountymd.gov/Faq.aspx?QID=488. https://bit.ly/3eJ4Pvk. Last visited May 14, 2021.

We hold that the circuit court properly determined that the Department's approval

of an FCP is not a final administrative act.  Therefore, the circuit court properly dismissed

the complaint, as the Foundation's allegations do not afford them a legal basis for relief.

*See Sheppard Pratt Health System, Inc*., 465 Md. at 350.

**JUDGMENT OF THE CIRCUIT COURT
FOR HARFORD COUNTY AFFIRMED.
APPELLANT TO PAY THE COSTS.**

The correction notice(s) for this opinion(s) can be found here:

https://mdcourts.gov/sites/default/files/import/appellate/correctionnotices/cosa/1063s20cn.pdf